IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LEALAN JONES, DAVID SACKS, and ILLINOIS GREEN PARTY, a voluntary association and political party, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 12-cv-09997 |
| WILLIAM M. McGUFFAGE, sued in his official capacity as Chairman, Illinois State Board of Elections, JESSE R. SMART, sued in his official capacity as Vice-Chairman, Illinois State Board of Elections, BRYAN A. SCHNEIDER, sued in his official capacity as member of Illinois State Board of Elections, BETTY J. COFFRIN, sued in her official capacity as member of Illinois State Board of Elections, HAROLD D. BYERS, sued in his official capacity as member of Illinois State Board of Elections, JUDITH C. RICE, sued in her official capacity as member of Illinois State Board of Elections, CHARLES W. SCHOLZ, sued in his official capacity as member of Illinois State Board of Elections, ERNEST L. GOWEN, sued in his official capacity as member of Illinois State Board of Elections, and RUPERT T. BORGSMILLER, sued in his official capacity as Executive Director, Illinois State Board of Elections, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND
PERMANENT INJUNCTION

NOW COME the Plaintiffs, LeAlan Jones, David Sacks and Illinois Green Party, a voluntary association and political party, by and through their undersigned counsel, and for their Complaint at Law against Defendants William F. McGuffage, sued in his official capacity as Chairman of the Illinois State Board of Elections, Jesse R. Smart, sued in his

1

official capacity as Vice-Chairman of the Illinois State Board of Elections, Bryan A. Schneider, sued in his official capacity as member of the Illinois State Board of Elections, Betty J. Coffrin, sued in her official capacity as member of the Illinois State Board of Elections, Harold D. Byers, sued in his official capacity as member of the Illinois State Board of Elections, Judith C. Rice, sued in her official capacity as member of the Illinois State Board of Elections, Charles W. Scholz, sued in his official capacity as member of the Illinois State Board of Elections, Ernest L. Gowen, sued in his official capacity as member of the Illinois State Board of Elections, and Rupert T. Borgsmiller, sued in his official capacity as Executive Director of the Illinois State Board of Elections, states:

## JURISDICTION AND VENUE

1. This Complaint is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3), 1343(a)(4) and the aforementioned statutory and constitutional provisions. Venue in this Court exists and is proper pursuant to 28 U.S.C. § 1391(b), in that one or more Defendants reside within this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Northern District of Illinois.

## PARTIES

2. Plaintiff Illinois Green Party (hereinafter "ILGP") is a voluntary association and political party organized in the State of Illinois, for purposes of political advocacy and promoting the election of certain of its members to public office.

3. Plaintiff LeAlan Jones (hereinafter "Jones"), is a member of the ILGP residing

2

in Cook County, Illinois. On December 8, 2012, following the internal procedures and protocols of Plaintiff ILGP, the ILGP selected Plaintiff Jones as its candidate for U.S. Representative to Congress from the State of Illinois Second Congressional District, in the Special Election for that seat to be held April 9, 2013.

4. Plaintiff David Sacks (hereinafter "Sacks") is a duly registered voter and member of the ILGP residing in the Second Congressional District, who would like the opportunity to vote for Plaintiff Jones in the aforestated Special Election.

5. Defendant William F. McGuffage presently serves as Chairman of the Illinois State Board of Elections (hereinafter "Board"), a state agency, in which capacity he acts under color of state law to administer and enforce the provisions of the Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 5/1A-6, 1A-8 and the other provisions of the Election Code.

6. Defendant Jesse R. Smart, presently serves as Vice-Chairman of the Board, in which capacity he acts under color of state law to administer and enforce the provisions of the Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 5/1A-6, 1A-8 and the other provisions of the Election Code.

7. Defendant Bryan A. Schneider, presently serves as a member of the Board, in which capacity he acts under color of state law to administer and enforce the provisions of the Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 1A-8 and the other provisions of the Election Code.

8. Defendant Betty J. Coffrin presently serves as a member of the Board, in which capacity she acts under color of state law to administer and enforce the provisions of the

Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 1A-8 and the other provisions of the Election Code.

9. Defendant Harold D. Byers presently serves as a member of the Board, in which capacity he acts under color of state law to administer and enforce the provisions of the Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 1A-8 and the other provisions of the Election Code.

10. Defendant Judith C. Rice presently serves as a member of the Board, in which capacity she acts under color of state law to administer and enforce the provisions of the Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 1A-8 and the other provisions of the Election Code.

11. Defendant Charles W. Scholz presently serves as a member of the Board, in which capacity he acts under color of state law to administer and enforce the provisions of the Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 1A-8 and the other provisions of the Election Code.

12. Defendant Ernest L. Gowen presently serves as a member of the Board, in which capacity he acts under color of state law to administer and enforce the provisions of the Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 1A-8 and the other provisions of the Election Code.

13. Defendant Rupert T. Borgsmiller presently serves Executive Director of the Board, in which capacity he acts under color of state law to administer, enforce and execute the provisions of the Illinois Election Code, 10 ILCS 5/1-1 et seq., pursuant to 10 ILCS 1A-9 and the other provisions of the Election Code.

FACTUAL ALLEGATIONS

14. On or about November 21, 2012, Jesse Jackson, Jr., the incumbent representative to the U.S. House of Representatives from the Illinois Second Congressional District, resigned from that position. The Second Congressional District covers portions of Cook, Will and Kankakee counties in Illinois.

15. When a vacancy occurs in the office of U.S. House of Representatives from Illinois more than 180 days before the next general election, a special election must be held, pursuant to § 25-7 of the Illinois Election Code, 10 ILCS 5/25-7. As of Nov. 21, 2012, this provision read as follows:

> § 25-7. When any vacancy shall occur in the office of representative in congress from this state more than 180 days before the next general election, the Governor shall issue a writ of election within 5 days after the occurrence of that vacancy to the county clerks of the several counties in the district where the vacancy exists, appointing a day within 115 days to hold a special election to fill such vacancy.

16. Such special elections are further governed by the provisions of § 7-61 of the Illinois Election Code, 10 ILCS 5/7-61, which states, in pertinent part:

> § 7-61. Whenever a special election is necessary the provisions of this Article are applicable to the nomination of candidates to be voted for at such special election.

17. In response to the resignation of Representative Jesse Jackson, Jr., and the consequent need for a special election, the Illinois General Assembly passed Public Act 97–1134, signed into law on December 3, 2012. P.A. 97-1134 amended § 25-7 of the Election Code to add a new sub-section (b), which reads, in pertinent part:

> (b) Notwithstanding subsection (a) of this Section or any other law to the contrary, a special election to fill a vacancy in the office of representative in congress occurring less than 60 days following the 2012 general election shall be

held as provided in this subsection (b). A special primary election shall be held on February 26, 2013, and a special election shall be held on April 9, 2013. Except as provided in this subsection (b), the provisions of Article 7 of this Code are applicable to petitions for the special primary election and special election. Petitions for nomination in accordance with Article 7 shall be filed in the principal office of the State Board of Elections not more than 54 and not less than 50 days prior to the date of the special primary election, excluding Saturday and Sunday. Petitions for the nomination of independent candidates and candidates of new political parties shall be filed in the principal office of the State Board of Elections not more than 68 and not less than 64 days prior to the date of the special election, excluding Saturday and Sunday.

Except as provided in this subsection, the State Board of Elections shall have authority to establish, in conjunction with the impacted election authorities, an election calendar for the special election and special primary.

18. Under the aforestated Article 7 of the Election Code, as described in § 7-2, 10 ILCS 5/7-2, and in Article 10 of the Election Code, as described in § 10-1, 10 ILCS 5/10-2, political parties that received more than 5 percent of the vote in the State, or in a political subdivision of the State, in the election immediately prior to the election in question, are "declared" or recognized as "established" political parties in the State, or in such political subdivision. Pursuant to Article 7 and Article 10 of the Election Code, established parties have their candidates for partisan public office selected via a primary election, and are in other respects treated differently under the Election Code than other political parties.

19. Plaintiff ILGP was founded in 1999 and was an established political party in Illinois from 2007 – 2010. However, under the provisions of § 10-2, it is now categorized as a "new" political party in the Second Congressional District and must follow the petitioning process set forth in that section in order to get its candidate on the ballot in the special election set for April 9, 2013.

6

20. Under the provisions of § 5/7-10 of the Election Code, 10 ILCS 5/7-10, in order for the candidate of an established political party to get on the primary ballot for a congressional election, he/she must file a petition for nomination that "must contain at least the number of signatures equal to 0.5% of the qualified primary electors of his or her party in his or her congressional district."

21. Under the provisions of § 10-2 of the Election Code, 10 ILCS 5/10-2, a candidate of the ILGP in the Second Congressional District, must, in order to get its candidate on the ballot, file a petition "signed by qualified voters equaling in number not less than 5% of the number of voters who voted at the next preceding regular election in such district or political subdivision in which such district or political subdivision voted as a unit for the election of officers to serve its respective territorial area."

22. Applying these aforestated provisions of the Election Code, a candidate of the Democratic Party (an established party), in order to appear on the ballot in the February 26, 2012 Special Primary election for U.S. Representative from the Second Congressional District, would have to collect and file 1,256 valid signatures from registered voters in the District by no later than January 7, 2013, a period encompassing 34 days (counting December 4, 2012 as the starting date).

23. Applying these aforestated provisions of the Election Code, a candidate of the Republican Party (an established party), in order to appear on the ballot in the February 6, 2012 Special Primary election for U.S. Representative from the Second Congressional District, would have to collect and file 288 valid signatures from registered voters in the District during that same 34-day period.

7

24. Applying these aforestated provisions of the Election Code, Plaintiff Jones, as the candidate of the ILGP, cannot and would not appear on the February 26, 2012 Special Primary ballot but would have to collect and file 15,682 valid signatures from registered voters in the District by no later than February 4, 2013 in order to appear on the April 9, 2013 Special Election ballot, a period encompassing 62 days (counting December 4, 2012 as the starting date).

25. Accordingly, under the aforestated provisions of the Election Code, a candidate of the Democratic Party for the seat at issue would have to collect an average of 37 valid petition signatures a day in order to appear on the Special Primary ballot. A candidate of the Republican Party for the seat at issue would have to collect an average of 8.5 valid petition signatures a day in order to appear on the Special Primary ballot. However, Plaintiff Jones, as a candidate of the ILGP, would have to collect an average of 253 valid petition signatures a day in order to appear on the Special Election ballot.

26. The aforestated provisions of the Illinois Election Code, on their face and as applied, discriminate against the candidates, including Plaintiff Jones, of "new" political parties, such as Plaintiff ILGP, by imposing vastly disproportionate petition signature gathering requirements on them in contrast to the modest or *de minimis* petition signature gathering requirements imposed on the candidates of "established" political parties, and impose petition signature gathering requirements on the candidates of "new" political parties of such onerous proportions as to make it practically, virtually and/or actually impossible for such candidates to gain ballot access and/or to discourage the candidates of such parties from making the effort to gain ballot access.

27. The aforestated provisions of the Illinois Election Code, on their face and as applied, also interfere with the rights of voters, including Plaintiff Jones and Plaintiff Sacks, to associate so as to form a political party, effectively advocate for that party and vote for the candidate or candidates of that party.

28. The aforestated provisions of the Illinois Election Code, on their face and as applied, therefore violate the Plaintiffs' Free Speech and associational rights guaranteed by the First Amendment to the United States Constitution, incorporated and made applicable to the State of Illinois by operation of the Fourteenth Amendment to the United States Constitution.

29. The aforestated provisions of the Illinois Election Code, on their face and as applied, violate the Plaintiffs' right to Due Process and Equal Protection under the law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

30. The State of Illinois lacks any compelling state interest to justify the discriminatory and vastly disproportionate petition signature gathering requirements that it imposes on the candidates of "new" parties seeking to place its candidates on the ballot as described herein.

31. The Defendants and their employees have exercised and will continue to exercise their authority under color of state law to enforce the aforestated provisions of the Illinois Election Code, both facially and as applied to the Plaintiffs, for the 2013 Special Primary Election and Special General Election for U.S. Representative from the State of Illinois Second Congressional District and all subsequent Primary and General Elections, in such a manner as to be in violation of the First and Fourteenth Amendments

to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that this Court:

1. Issue a declaration that the aforestated provisions of the Illinois Election Code, both facially and as applied to the Plaintiffs, are unconstitutional, being inconsistent with the First and Fourteenth Amendments to the United States Constitution;

2. Enter a preliminary injunction and permanent order enjoining Defendants from enforcing the aforestated provisions of the Illinois Election Code as applied to Plaintiffs and enjoining them to place the name of Plaintiff LeAlan Jones on the April 9, 2013 Special Election ballot as the candidate of the Illinois Green Party for U.S. Representative to Congress from the State of Illinois Second Congressional District;

3. Award Plaintiffs the reasonable costs and expenses of this action, including attorneys' fees pursuant to the Civil Rights Attorney's Fees and Awards Act of 1976, 42 U.S.C. §1988; and

4. Such other and further relief as this Court deems just and equitable

        RESPECTFULLY SUBMITTED,

        LEALAN JONES, DAVID SACKS and
        ILLINOIS GREEN PARTY, PLAINTIFFS

BY:        s/Christopher Kruger
        Christopher Kruger, one of Plaintiffs'
        Attorneys

Christopher D. Kruger
Attorney at Law
ARDC# 6281923
2022 Dodge Avenue
Evanston, IL 60201
Phone: 847 420 1763
Fax: 847 733 0135
email: ckruger@ameritech.net

Richard J. Whitney
Attorney at Law
ARDC# 06238355
Milwood Executive Suites
1400 North Wood Rd.
Murphysboro, IL 62966
Phone: (618) 549-5159
richwhitney@frontier.com

Werner Gruber
Attorney at Law
ARDC# 6304518
3455 N. Hoyne Ave.
Chicago, IL 60618
Phone: 708 420 2100
Fax: 312 268 7064
wgruberlaw@gmail.com